360 So.2d 264 (1978)
FIRST NATIONAL MORTGAGE CORPORATION
v.
The MANHATTAN LIFE INSURANCE COMPANY.
No. 9242.
Court of Appeal of Louisiana, Fourth Circuit.
June 13, 1978.
*265 Law Offices of Louis G. Dutel, Jr., Russell J. Nunez, Jr. and William J. Dutel, New Orleans, for plaintiff-appellant.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Herschel L. Abbott, Jr. and Robert B. Bieck, Jr., New Orleans, for defendant-appellee.
Before SCHOTT, BEER and GARSAUD, JJ.
*266 GARSAUD, Judge.
This is an appeal from the maintaining of defendant's exception of no cause of action. Plaintiff-appellant, First National Mortgage Corporation (FNMC) instituted suit to collect a termination fee of one percent of the outstanding loan portfolio services by plaintiff for defendant-appellee, Manhattan Life Insurance Company (Manhattan). Plaintiff's petition alleged that such a termination fee was customary in the mortgage industry in Louisiana, although no mention of a termination fee was made in the servicing agreement between the parties. Defendant Manhattan, however, was given the unilateral right to terminate without cause upon ninety days' written notice. Defendant argues that the servicing agreement was the complete contract between the parties, and thus that plaintiff had no cause of action for a termination fee not provided in the agreement.
Plaintiff-appellant FNMC is engaged in the business of mortgage banking, which involves making loans secured by mortgages, selling loans to institutional investors such as defendant Manhattan, and servicing the loans for the institutional investors. In furtherance of this purpose, in March 1965 FNMC entered into a servicing agreement with defendant Manhattan, under which FNMC would service loans sold to Manhattan for a fee to be agreed upon at the time the loan is placed with FNMC for servicing. The pertinent provisions of the servicing agreement are as follows:
"1. The Insurance Company plans to invest or already has invested in bonds, notes, mortgages and Deeds of Trust in the NEW ORLEANS & BATON ROUGE, LOUISIANA AND SOUTHERN MISSISSIPPI area. FIRST NATIONAL MORTGAGE CORPORATION is hereby appointed as Servicing Agent for all such securities received through it or placed with it by the Insurance Company for servicing.
"2. The Servicing Agent shall collect interest and principal payments as they accrue on the aforesaid securities and on or before the 20th of each month remit to the Insurance Company the sums collected, with a report of any arrearages. The Servicing Agent shall require payment of taxes by the owners and deposit in a trust fund in a bank account, not mingled with any funds of the Servicing Agent, all payments made by the owners on account of principal, interest, taxes and insurance. The said Servicing Agent will keep the Insurance Company advised as to the status of taxes on the properties securing said mortgage loans.

* * * * * *
"7. In consideration of such services, the Insurance Company will pay the Servicing Agent the servicing fee agreed upon at the time the security is placed with it for servicing, which the Servicing Agent may deduct from the interest on the loan, as and when it collects the same. The Servicing Agent, however, shall have no direct or indirect interest in said loan.
"8. A breach by the Servicing Agent in the performance of this agreement in servicing any mortgage loans shall, at the option of the Insurance Company, terminate this agreement as to any and all mortgage loans then serviced hereunder, whereupon the rights and duties of the Servicing Agent, and its right to compensation hereunder shall immediately terminate and the Servicing Agent shall forthwith deliver to the Insurance Company a statement showing all payments by it collected pursuant hereto and a statement of all moneys held in trust by it for the payment of maintenance charges and other charges in respect to such mortgage loans, and shall immediately pay over to the Insurance Company all moneys so held.
"9. It is further understood and agreed that the Insurance Company may terminate this agreement at any time without cause, on 90 days' written notice to the Servicing Agent, and the rights and duties of the Servicing Agent and its right to compensation hereunder shall terminate on the expiration of 90 days after the mailing to it of such notice and *267 the Servicing Agent shall then deliver to the Insurance Company a statement showing all payments by it collected pursuant hereto, and a statement of all moneys held in trust by it for the payment of maintenance charges and other charges in respect to such mortgage loans and shall immediately pay over to the Insurance Company all the moneys so held."
In resolving the question of whether the trial court erred in granting defendant's exception of no cause of action, the following issues must be addressed: (1) whether the servicing agreement was void for error in the cause; and (2) whether the servicing agreement was a complete contract between FNMC and Manhattan, thus obviating the introduction of parol evidence to show custom and usage in the mortgage banking industry in order to recover a termination fee.
With respect to the question of error in the cause, the trial court was correct in sustaining an exception of no cause of action, as plaintiff petitioned for damages on the basis of this legal principle. Such a request is really inconsistent with the error-in-the-cause concept, as error in the motive or principal cause vitiates consent and invalidates the contract. La.Civ. Code Arts. 1823, 1825, and 1826; Marcello v. Bussiere, 284 So.2d 892 (La. 1973); Cryer v. M & M Manufacturing Company, Inc., 273 So.2d 818 (La.1973). If the contract is null and void, the remedy is to rescind and to put the parties in the position in which they were prior to the attempted agreement. Thus, a request for damages based on this concept states no cause of action. Be that as it may, plaintiff nonetheless could not have amended under Article 934 of the Code of Civil Procedure to state a cause of action for rescission, as its argument for that remedy simply does not support a contention of error in the cause. It is based on the allegation that FNMC "took less on the sale with the understanding, and Manhattan was aware of this understanding, that it would receive a larger servicing fee over the life of the loan." Whatever the understanding may have been, however, it was not written into the contract; rather, the contract gave to Manhattan the unilateral right to terminate the agreement without cause. The claimed error cannot be relied on to modify the clear language of the agreement, thus proscribing any viable amendment to the petition. Ardoin v. Central Louisiana Electric Company, Inc., 318 So.2d 5 (La.1975). As the court stated in Ardoin,
"Such a contention cannot stand in the face of the contract's plain and unambiguous language. Nothing about the contract or, for that matter, the facts upon which it was based, indicates that there was error which would form the basis for avoiding the contract for lack of consent.. . .

"A claimed error, as in the instant case, cannot have the effect of voiding a contract otherwise complete as to intent and purpose. Such a result impairs the sanctity of obligations and nullifies the effect of law to which they are entitled. . . . For when the intent of the parties is evident and lawful, no law can operate to enlarge or restrain that intent. . . . It follows from these principles that judges cannot refuse to apply the precise clauses of agreements legally formed even on the pretense of interpretation or equity. . . ." (Citations omitted and emphasis added.) 318 So.2d at 8, 9.
Plaintiff next contends that the servicing agreement is not the complete contract between the parties, and thus that parol evidence of custom and usage in the industry is admissible. Specifically, plaintiff argues that because the servicing fee for each loan was to be determined at the time it was placed with the plaintiff for servicing, the Mortgage Loan Submission Form and the Mortgage Loan Approval Form, completed for each loan, constituted the completed contract. In addition, the contentions are that the servicing agreement is not a complete and valid contract because (1) it does not obligate the appellant to sell any fixed amount of loans to the appellee; (2) it does not obligate the appellee to purchase any loans whatsoever from the appellant; and *268 (3) it does not fix any ascertainable terms for loans to be purchased. Thus, FNMC contends that as a contract the servicing agreement fails to meet the specificity requirements of Article 1886 of the Civil Code.
These arguments, however, overlook the basic purpose of the servicing agreement, which is to establish a relationship between FNMC and Manhattan to govern all loans to be sold and serviced between the parties. The arrangement was within the scope of Article 1771 of the Civil Code, with the servicing agreement constituting the principal contract, and each mortgage loan agreement being an accessory contract, which in no way reduced the completeness of the principal servicing agreement. Each mortgage loan agreement was executed pursuant to the terms of the servicing agreement. Thus, it can be said that there existed numerous contracts between the parties, consisting of both the principal servicing agreement and all of the separate mortgage loan agreements. None, however, provided for any termination fee, nor was there any allegation that either type of contract (the principal contract or the accessory contracts) contained such a termination fee. Consequently, custom and usage cannot be used to modify or complete the agreement. Civil Code Article 1963 states,
"When the intent of the parties is evident and lawful, neither equity nor usage can be resorted to, in order to enlarge or restrain that intent, nor can any law operate to that effect, unless it be some prohibition or other provision, which the parties had no right to modify or renounce."
The intent is evident because the words are clear: "[T]he rights and duties of the Servicing Agent and its right to compensation hereunder shall terminate on the expiration of 90 days after the mailing to it of such notice . . ." As this contract (the principal servicing agreement), then, is not ambiguous or incomplete, custom and usage will not be imported into it. Cf. Southern Bitulithic Co. v. Algiers Ry. & Lighting Co., 130 La. 830, 58 So. 588 (1912); Fee v. Vancouver Plywood Co., Inc., 331 So.2d 151 (La.App.3rd Cir. 1976). As the four corners of this instrument govern the relationship between the parties, and such instrument does not provide for a termination fee, the district court was correct in sustaining the exception of no cause of action.
Accordingly, the decision of the trial court is hereby affirmed.
AFFIRMED.